## UNITED STATES DISTRICT COURT
## FOR DISTRICT OF NEBRASKA

| | |
|---|---|
| CAROLINE HURLEY, on behalf of herself individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>ALN MEDICAL MANAGEMENT LLC,<br><br>            Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff CAROLINE HURLEY ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant ALN MEDICAL MANAGEMENT LLC, ("ALN" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2.      The Data Breach resulted in unauthorized disclosure, exfiltration, and theft of clients' current and former patients' highly personal information, including first and last names, Social Security numbers, driver license numbers, government issued ID number, financial information, health insurance information ("personally identifying information" or "PII"), and medical information ("protected health information" or "PHI"). Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

1

3.      ALN's breach differs from typical data breaches because it affects consumers who had no relationship with ALN, never sought one, and never consented to ALN collecting and storing their information.

4.      On information and belief, the Data Breach occurred between March 18, 2024, and March 24, 2024, allowing cybercriminals unfettered access to Plaintiff's and the Class's most sensitive information for almost a week.

5.      On or about March 21, 2025–a year after the Data Breach first occurred– ALN finally began notifying Class Members about the Data Breach ("Breach Notice"). A sample Breach Notice is attached as Exhibit A.

6.      ALN took a year before informing Class Members even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

7.      ALN's Breach Notice obfuscated the nature of the breach and the threat it posted— refusing to tell its clients' patients how many people were impacted, how the breach happened, and why it took Defendant until March 21, 2025, to begin notifying victims that hackers had gained access to highly private Sensitive Information.

8.      Defendant's failure to timely detect and report the Data Breach made its client's patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

9.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

10.     In failing to adequately protect Plaintiff's and the Class's Sensitive Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its current and former patients.

11.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

12.     Plaintiff is a Data Breach victim.

13.     Accordingly, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

14.     Plaintiff, Caroline Hurley is a natural person and citizen of Mount Holly, New Jersey, where she intends to remain. Plaintiff received ALN's notice stating her Sensitive Information was compromised in the Data Breach.

15.     Defendant, ALN, is a Nebraska Company, incorporated under the laws of the State of Delaware, with its principal place of business at 3401 Village Dr, Ste 200, Lincoln, Nebraska 68516.

3

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and Plaintiff are citizens of different states. And there are over 100 putative Class members.

17.     This Court has personal jurisdiction over Defendant because it is headquartered in Nebraska, regularly conducts business in Nebraska, and has sufficient minimum contacts in Nebraska.

18.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

*ALN*

19.     ALN is a professional services firm which provides revenue cycles and billing services to its clients, including healthcare companies. ALN boasts a total annual revenue of $13 million.[1]

20.     ALN's services are specialized for corporations and healthcare facilities who oversee highly sensitive data. ALN thus must oversee, manage, and protect the Sensitive Information of its clients' patients, ALN's consumers.

21.     On information and belief, these third-party consumers, whose ALN was collected by ALN, do not directly do any business with ALN.

---

[1] Zoominfo, ALN, https://www.zoominfo.com/c/aln-medical-management-inc/1360463 (last visited March 31, 2025).

22.     In collecting and maintaining its clients' current and former patients' Sensitive Information, ALN agreed it would safeguard the data in accordance with state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information

23.     Despite recognizing its duty to do so, on information and belief, ALN has not implemented reasonably cybersecurity safeguards or policies to protect patients' Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, ALN leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' Sensitive Information.

***The Data Breach***

24.     Plaintiff is unsure how ALN got her Sensitive Information, including her name, demographic information, and medical information, but assumes it was provided to Defendant by one of her medical providers, specifically her spinal surgeon. Regardless, in collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

25.     On information and belief, Defendant collects and maintains patients' Sensitive Information in its computer systems.

26.     In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to state and federal law.

27.     According to the Breach Notice, Defendant admits that in March 2024, it "identified suspicious activity related to certain systems being hosted by a third-party service provider." Following an internal investigation, Defendant discovered that "certain files and folders within our

third-party hosted environment were accessed or taken by an unauthorized actor between March 18, 2024, and March 24, 2024." Ex. A.

28.    In other words, Defendant's cyber and data security systems were completely inadequate that it not only allowed cybercriminals to obtain files containing a treasure trove of thousands of its clients' patients' highly private Sensitive Information, but it also did not detect the Breach during its occurrence, allowing cybercriminals unfettered access to Plaintiff's and the Class's Sensitive Information.

29.    Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Sensitive Information for theft and sale on the dark web.

30.    On or around March 21, 2025 –a year after the Breach was discovered– ALN finally notified Plaintiff and Class Members about the Data Breach.

31.    Despite its duties and alleged commitments to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing patients' Sensitive Information, as evidenced by the Data Breach.

32.    In response to the Data Breach, Defendant contends that it has "implemented additional measures to further protect against similar incidents moving forward." Ex. A. Although Defendant fails to expand on what these alleged "additional measures" are, such steps should have been in place before the Data Breach.

33.    Through the Data Breach, Defendant recognized its duty to implement reasonable cybersecurity safeguards or policies to protect patients' Sensitive Information, insisting that, despite the Data Breach demonstrating otherwise, "We take this incident and the security of information in our care very seriously." Ex. A.

34.     Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements, explanation of benefits, and monitoring your free credit reports for suspicious activity and to detect errors." Ex. A.

35.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

36.     On information and belief, ALN has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

37.     Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

38.     On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over patients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

**The Data Breach was a Foreseeable Risk of which Defendant was on Notice.**

39.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

40.     In light of recent high profile data breaches at other healthcare and healthcare adjacent companies, Defendant knew or should have known that its electronic records and patients' Sensitive Information would be targeted by cybercriminals.

41.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[2] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[3]

42.     Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [4]

43.     Cyberattacks on medical systems and healthcare and healthcare adjacent companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.

---

[2]     2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited January 10, 2024).
[3] *Id*.
[4] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited January 10, 2024).

As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[5]

44.     In fact, many high-profile ransomware attacks have occurred in healthcare and healthcare adjacent companies, with an estimated that nearly half of all ransomware attacks being carried out are on healthcare companies, and with 85% of those attacks being ransomware similar to the one occurring here.[6]

45.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**Plaintiff's Experience**

46.     Plaintiff is unsure how ALN got her Sensitive Information, including her name, demographic information, and medical information, but assumes it was provided to Defendant by one of her medical providers, specifically her spinal surgeon. Regardless, in collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

47.     Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her about it for a year.

48.     As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

49.     As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the

---

[5] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited January 10, 2024).
[6] Ransomware explained, CSO, https://www.csoonline.com/article/563507/what-is-ransomware-how-it-works-and-how-to-remove-it.html (last visited January 10, 2024);

Notice of Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

50.    Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

51.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

52.    Plaintiff have suffered actual injury in the form of damages to and diminution in the value of their Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

53.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

54.    Indeed, following the Data Breach, Plaintiff has experienced a large increase in phishing calls, experiencing over 10 calls a day suggesting that her Sensitive Information is now in the hands of cybercriminals. As a result of this enormous increase, Plaintiff was forced to purchase an internet protection program through Netgear, with the hopes to either stop the spam calls entirely or at least have these calls identified as spam on her cellphone.

55.    Once an individual's Sensitive Information is for sale and access on the dark web, as Plaintiff's Sensitive Information is here as a result of the Breach, cybercriminals are

able to use the stolen and compromised to gather and steal even more information.[7] On information and belief, the phishing call Plaintiff is experiencing was made possible as a result of Defendant's Data Breach and the subsequent exposure of Plaintiff's Sensitive information to cybercriminals.

56.     Plaintiff has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

57.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

58.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.  The loss of the opportunity to control how their Sensitive Information is used;

    b.  The diminution in value of their Sensitive Information;

    c.  The compromise and continuing publication of their Sensitive Information;

    d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent

---

[7] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited January 9, 2024).

researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.    Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen Sensitive Information; and

h.    The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

59.     Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

60.     The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

61.     It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

62.     One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

63.     Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly

complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

64.    The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

65.    Defendant disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

66.    Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

13

*Consumers Prioritize Data Security*

67.     In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[8] Therein, Cisco reported the following:

a.   "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[9]

b.   "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[10]

c.   89% of consumers stated that "I care about data privacy."[11]

d.   83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[12]

e.   51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[13]

f.   75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[14]

---

[8] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[9] *Id*. at 3.
[10] *Id*.
[11] *Id*. at 9.
[12] *Id*.
[13] *Id*.
[14] *Id*. at 11.

68.    Defendant knew or should have known that adequate implementation of cybersecurity and protection of Sensitive Information, including Plaintiff and the Class's Sensitive Information was important to its customers.

***Defendant failed to adhere to FTC guidelines.***

69.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

70.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a.  protect the sensitive consumer information that it keeps;

b.  properly dispose of Sensitive Information that is no longer needed;

c.  encrypt information stored on computer networks;

d.  understand their network's vulnerabilities; and

e.  implement policies to correct security problems.

71.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

72.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

73.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

74.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

75.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [15]

76.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained. [16]

---

[15] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[16] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

77. The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents

that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

78.  Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fails to Comply with Industry Standards***

79.  As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

80.  Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

81.    Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

82.    Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

83.    These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its consumers. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

84.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing whose Sensitive Information was compromised in the Data Breach, including all those who received notice of the breach.

85.    Excluded from the Class is Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's

officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

86.     Plaintiff reserves the right to amend the class definition.

87.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

a. **Numerosity**. Plaintiff is representative of the Class, consisting of several thousand members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

ii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.   Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

iv.   Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

v.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.   Whether Defendant's Breach Notice was reasonable;

vii.   Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii.   What the proper damages measure is; and

ix.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

88.   Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

89.   Plaintiff realleges all previous paragraphs as if fully set forth below.

90.   Plaintiff and members of the Class entrusted their Sensitive Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling

and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

91.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

92.    Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

93.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security

protocols. Defendant actively sought and obtained Plaintiff's and the Class's Sensitive Information.

94.    The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

95.    Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

96.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

97.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their

bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

98.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

99.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, patients' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Sensitive Information.

100.    Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

101.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

102.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

103.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

104.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

105.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

106.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive

Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

107.    But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

108.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

109.    Had Plaintiff and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendant with their Sensitive Information.

110.    Defendant's various violations and its failure to comply with applicable laws and regulations constitute negligence *per se*.

111.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

112.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

**COUNT III**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

113.    Plaintiff realleges all previous paragraphs as if fully set forth below.

114.    Defendant entered into various contracts with its clients, including corporation and healthcare companies, to provide services to patients, including Plaintiff and the Class, i.e., Defendant's consumers.

115.    These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential information that Defendant agreed to collect and protect through its services. Thus, the benefit of collection and protection of the Sensitive Information belonging to Plaintiff and the Class were the direct and primary objective of the contracting parties.

116.    Defendant knew that if it were to breach these contracts with its financial provider clients, the clients' patients, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their Sensitive Information.

117.    Defendant breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' Sensitive Information.

118.    As reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by Defendant failure to use reasonable data security measures to store their Sensitive Information, including but not limited to, the actual harm through the loss of their Sensitive Information to cybercriminals.

119.    Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

120.    Plaintiff realleges all previous paragraphs as if fully set forth below.

121.    This claim is pleaded in the alternative to the breach of contractual duty claim.

122.    Plaintiff and members of the Class conferred a benefit upon Defendant in providing Sensitive Information to Defendant.

123.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate the treatment, services, and goods it sold to Plaintiff and the Class.

124.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class's Sensitive Information because Defendant failed to adequately protect their Sensitive Information. Plaintiff and the proposed Class would not have provided their Sensitive Information to Defendant had they known Defendant would not adequately protect their Sensitive Information.

125.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

**COUNT V**
**Invasion of Privacy—Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Class)**

126.    Plaintiff realleges all previous paragraphs as if fully set forth below.

127.    Plaintiff and Class Members had a reasonable expectation of privacy in their communications with Defendant via its communications platforms and services therein.

128.    Plaintiff and the Class had a legitimate expectation of privacy to their Sensitive Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

129.    Defendant owed a duty to its consumers, i.e. its clients' patients, including Plaintiff and the Class Members, to keep their Sensitive Information confidential.

130.    Defendant failed to protect said Sensitive Information and exposed the Sensitive Information of Plaintiff and the Class Members to unauthorized persons which is now publicly available, including on the dark web, and being fraudulently misused.

131.    Defendant allowed unauthorized third parties access to and examination of the Sensitive Information of Plaintiff and the Class Members, by way of Defendant's failure to protect the Sensitive Information.

132.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Sensitive Information of Plaintiff and the Class Members is highly offensive to a reasonable person.

133.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and the Class Members Sensitive Information was disclosed to Defendant as a condition of receiving services, but privately with an intention that the Sensitive Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and

the Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

134.    The Data Breach constitutes an intentional or reckless interference by Defendant with Plaintiff's and the Class Members' interests in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

135.    Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because they had actual knowledge that its information security practices were inadequate and insufficient.

136.    Defendant acted with reckless disregard for Plaintiff's and Class Members' privacy when they allowed improper access to its systems containing Plaintiff's and Class Members' Sensitive Information.

137.    Defendant was aware of the potential of a data breach and failed to adequately safeguard their systems and implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' Sensitive Information.

138.    Because Defendant acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class Members.

139.    As a proximate result of the above acts and omissions of Defendant, the Sensitive Information of Plaintiff and the Class Members was disclosed to third parties without authorization, causing Plaintiff and the Class Members to suffer injury and damages as set forth herein, including monetary damages, fraudulent misuse of their Sensitive Information and fraudulent charges; loss of the opportunity to control how their Sensitive Information is

used; diminution in value of their Sensitive Information; compromise and continuing publication of their Sensitive Information; and are entitled to compensatory, consequential, and incidental damages as a result of the Data Breach.

140.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class Members in that the Sensitive Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class Members.

## PRAYER FOR RELIEF

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.   Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.   Awarding attorneys' fees and costs, as allowed by law;

H.   Awarding prejudgment and post-judgment interest, as provided by law;

I.   Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.   Granting such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable

Dated: March 31, 2025                      Respectfully submitted,

By: */s/ Raina C. Borrelli*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Pro Hac Vice forthcoming*
*Attorney for Plaintiff and Proposed Class*